IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| PACIFIC HIDE & FUR DEPOT, a Montana corporation, n/k/a Pacific Steel & Recyling,<br><br>            Plaintiff,<br><br>    vs.<br><br>GREAT AMERICAN INSURANCE COMPANY, a Delaware corporation; and RESOLUTE MANAGEMENT INC., and NATIONAL INDEMNITY COMPANY,<br><br>            Defendants. | CV 12–36–BU–DLC<br><br>ORDER |

This order resolves three extensively briefed and interrelated pending motions in this case: (1) Defendant Great American Insurance Company's motion for partial summary judgment based on the statute of limitations[1] (doc. 60); (2) Plaintiff Pacific Hide & Fur Depot's cross-motion for partial summary judgment on Defendant Great American Insurance Company's statute of limitations affirmative defense (doc. 98); and (3) Defendants National Indemnity Company

---

[1] While this motion was filed jointly by Defendants Century Indemnity Company, Central National Insurance Company of Omaha, and Great American Insurance Company, the Court granted Plaintiff's unopposed motion to dismiss Century and Central National on August 19, 2013 (doc. 102).

1

and Resolute Management, Inc.'s motion to amend the September 27, 2012 scheduling order so that they may file and brief motions for summary judgment on the statute of limitations (doc. 104).

For the reasons articulated below, Great American's motion is denied, Pacific Hide's motion is granted, and National Indemnity and Resolute Management's motion is denied.

## I. FACTS

From approximately 1957 to 1988, Pacific Hide & Fur Depot, Inc. ("Pacific") leased a property in Bozeman, Montana that later became known as the CMC Bozeman Asbestos Site ("Site"). Between 1957 and 1977, Pacific purchased at least eleven liability policies (doc. 35) from Great American Insurance Company ("Great American"), which are the subject of this litigation.

The Montana Department of Environmental Quality ("MDEQ") notified Pacific sometime in 1990 that it might be potentially liable for the cleanup of asbestos contamination at the Site. In a letter dated January 2, 1996, pursuant to the Comprehensive Environmental Cleanup and Responsibility Act ("CECRA"), MDEQ notified Pacific that it had been identified as a potentially liable person ("PLP") for the Site cleanup, and that "if subsequently found liable," Pacific "will be required to reimburse MDEQ for remedial action costs incurred by the state

in . . . implementing or in compelling Pacific . . . to implement remedial action . . . ." (Doc. 63-1.) MDEQ requested Pacific's cooperation with CMC, the Site owner, but made no other requests or demands. (Doc. 63-1.)

In a letter dated September 23, 2003, MDEQ offered Pacific and the other PLPs the opportunity to conduct either an "interim or permanent remediation" of the Site, and stated that if Pacific chose not to conduct one of the remedial actions outlined in the letter, "DEQ may conduct the actions itself and recover its costs or it may issue an order or initiate a civil action requiring [Pacific] to perform the actions." (Doc. 63-5.) Pacific declined to conduct any remedial action, and exchanged several letters with MDEQ regarding Pacific's CECRA liability. For the purposes of these motions, suffice it to say that Pacific did not believe it was liable, and MDEQ disagreed.

In a letter dated March 25, 2004, counsel for Pacific notified Great American that Pacific had been identified as a PLP at the Site, and stated: "It is my understanding that the City of Bozeman has agreed to perform a voluntary cleanup at the site and is in the process of implementing a cleanup plan. It is possible that the City of Bozeman will, in the future assert a cost contribution claim against Pacific. Pacific hereby requests that Great American defend and indemnify it from all claims arising at the [Site]." (Doc. 63-12.) Pacific attached a

3

schedule of the fourteen alleged Great American policies.

In a letter dated April 27, 2005, Great American denied Pacific's tender for defense and indemnity coverage. (Doc. 86-10.) On August 7, 2007, Pacific executed a stipulated consent judgment, under which it agreed to a 15% allocation of liability for the Site, to be paid to the City of Bozeman as the party that undertook the MDEQ-mandated site cleanup. (Doc. 86-17.) On July 13, 2010, Pacific executed an "Agreement and Release" with the City, and tendered a check for $650,000, an amount that Pacific and the City agreed constituted Pacific's 15% allocation. (Doc. 35-7.)

Pacific filed a complaint against Great American and the other Defendants in the Montana Eighteenth Judicial District Court on May 2, 2012, alleging breach of contract and bad faith claims handling practices. (Doc. 9.) Century and Central National filed a notice of removal on June 8, 2012 (doc. 1); Great American joined the notice on the same day (doc. 2). Following the preliminary pretrial conference on September 11, 2012, the Court bifurcated this litigation, with Phase I to deal with Counts I-VI (the breach of contract and declaratory judgment claims against Great American, Century, and Central National), and Phase II to deal with the remaining Counts (the Bad Faith and Unfair Trade Practices Act Claims).

Great American moves for summary judgment, arguing that Counts I through VI of Plaintiff's amended complaint (the Phase I claims) are barred by Montana's eight year statute of limitations for actions founded upon a written instrument. MCA § 27-2-202.[2] In its cross-motion for summary judgment, Pacific argues that the statute of limitations had not expired by the time it filed its complaint. Not surprisingly, the point of contention between the parties, and the issue the Court must now resolve, is when the breach of contract claim accrued and the statute of limitations began to run.

Following the Court's dismissal of Century and Central National as defendants in this case, Phase II defendants National Indemnity Company and Resolute Management moved the Court to amend its scheduling order to allow them to file a summary judgment motion on the statute of limitations affirmative defense. (Doc. 104.) Pacific opposes this motion. (Doc. 108.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[2] Because Counts II, III, V, and VI relate to Defendants who have been dismissed since Great American's motion for summary judgment was filed, the instant motions relate to Counts I and IV. In Count I Pacific alleges that Great American breached its contractual duty by failing to defend and indemnify Pacific against claims brought by MDEQ and the City of Bozeman. Count IV is a declaratory judgment action to determine Pacific's rights under its policies with Great American.

5

as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of informing the Court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

The movant's burden is satisfied when the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Where the moving party has met its initial burden, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation marks omitted).

### III. ANALYSIS

#### A. Motions for Summary Judgment on the Statute of Limitations

As previously stated, the resolution of these motions hinges on the question of when the statute of limitations for Pacific's breach of contract claims began to run.

The Court's jurisdiction over this matter is based on diversity of citizenship under 28 U.S.C. § 1332. "The source of substantive rights enforced by a federal

6

court under diversity jurisdiction . . . is the law of the States." *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 112 (1945). Under Montana law, an action founded upon a written contract must be commenced within eight years of when the action accrued. MCA § 27-2-202(1). An action is commenced when the complaint is filed. MCA § 27-2-102(1)(b). For the purposes of the statute of limitations, such an action "accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action." MCA § 27-2-102(1)(a). Pacific filed its complaint on May, 2, 2012; thus, if all elements of the claim existed prior to May 2, 2004, Pacific's complaint is untimely and barred as a matter of law.

### 1. The PTSCA Cases

In support of its motion, Great American relies on three relatively recent Montana Supreme Court decisions: *Montana Petroleum Tank Release Comp. Bd. v. Capitol Indem. Co.*, 137 P.3d 522 (Mont. 2006); *Montana Petroleum Release Comp. Bd. v. Federated Service Ins. Co.*, 185 P.3d 998 (Mont. 2008); and *Montana Petroleum Tank Release Comp. Bd. v. Empire Fire and Marine Ins. Co.*, 185 P.3d 1021 (Mont. 2008) (hereinafter collectively referred to as the "PTSCA cases").

The PTSCA cases involve subrogation claims filed by the Petroleum Tank Release Compensation Board ("Board") against several insurance carriers. The Board is a state entity whose purpose is to protect the public health, safety, and the environment by encouraging prompt cleanup of petroleum releases. *Federated Service*, 185 P.3d at 999. The Board is charged with administering the Petroleum Tank Release Cleanup Fund, which is funded by the owners and operators of petroleum storage tanks, and provides reimbursement for certain remedial costs when underground tanks fail. *Id.* "When the Board reimburses owners or operators for their cleanup costs, it may be entitled to subrogate against insurance carriers whose policies covered the cleanup costs of the owners for petroleum spills or leaks." *Id.*

In the PTSCA cases, owners of underground petroleum storage tanks discovered or were notified of soil and/or groundwater contamination emanating from their tanks. The owners investigated and remediated the spills as required by Montana law and demanded by the MDEQ. With the exception of the owner in *Empire Fire*, the owners did not notify their insurers of the contamination or of their obligation to remediate, nor did they file claims to recover the cleanup costs under their policies. *See Capitol Indemnity*, 137 P.3d at 525; *Federated Service*, 185 P.3d at 1000. Instead, the owners sought and received reimbursement from

8

the Board for their cleanup costs. The Board then brought direct subrogation claims against the owners' insurance carriers to recover the cost of cleanup.

The crux of the insurers' argument was that the statute of limitations began to run when the owners could have first filed a claim against their insurers for payment of the cleanup costs, which they argued occurred no later than when the owners began paying cleanup costs. *Capital Indemnity*, 137 P.3d at 526. The Board countered that the limitations period did not begin to run until the insurers denied its claims to recover the amount that it reimbursed the owners that undertook the cleanup. *See Capitol Indemnity*, 137 P.3d at 526. In each of the three PTSCA cases, the Montana Supreme Court ruled in favor of the insurer and against the Board.

In *Federated Service*, the Court stated: "[T]he statute of limitations for a contract claim began to run when all the elements had accrued for the insured to have filed a claim with its insurer—not when the claim had been submitted to and then denied by the insurer." 185 P.3d at 1001 (citing *Capitol Indemnity*, 137 P.3d 522 at ¶ 18). "[A]ll of the elements of the claim or cause existed when the events that were insured against occurred. When the spills insured by these policies occurred, the right to maintain an action on the insurance was complete. At that time, the period of limitations began to run and the insured had eight years to

commence an action to recover under their policies." *Id.* at 1001-1002. As summarized in *Empire Fire*: "the statute of limitations for an indemnity claim by the Board began to run when the claim had accrued–e.g., when [insured] discovered the leak–not when the insurer denied the claim." 185 P.3d at 1023.

Great American claims that together, "these cases establish that the eight-year limitations period for suits on insurance contracts in the environmental pollution context commences when a policyholder learns of environmental contamination and associated liability," (doc. 61 at 6.), and that the eight years began to run when Pacific first learned of the contamination, which the undisputed record indicates was prior to May 2, 2004. This, however, is an overbroad and inaccurate interpretation of the holdings in this line of cases.

Great American mistakenly conflates two distinct causes of action to which Montana's eight year statute of limitations for "the commencement of an action upon contract" applies: a subrogation claim for indemnity, and a claim for breach of the contractual duties to defend and indemnify. There is no indication in any of the PTSCA cases that the Montana Supreme Court intended for its decisions regarding the former to apply to the latter. Under Great American's interpretation, the cause of action for a breach of contract claim could potentially, as in this case, accrue before the alleged breach occurred, which is both illogical and contrary to

10

the basic precepts of contract law.

This is not an "insurance coverage case" (doc. 61 at 1); this is an action for breach of contract, and Great American cannot use the Montana Supreme Court's narrow holdings in the PTSCA cases to subsume that cause of action. While the PTSCA cases have some bearing on the duty to indemnify as discussed below, they are wholly unrelated to the duty to defend.

Montana law is clear that "[a]ccrual begins at the breach in a breach of contract action," *Testana, Inc. V. Klabuza Oil & Gas*, 222 P.3d 580, 587 (Mont. 2010) (citing *Kitchen Krafters v. Eastside Bank of Montana*, 789 P.2d 567, 571 (Mont. 1990) (abrogated in part on other grounds)), and that "the statute of limitations runs from the time of breach in a breach of contract action." *Id.* Thus, the dispositive question is not when did Pacific learn of the contamination, but when did Great American allegedly breach their contractual duties to defend and to indemnify.

### 2. The Duty To Defend

As a threshold issue, it is critical to note that not only do the PTSCA cases not address the breach of contract issue, but they are limited to indemnity claims, and do not touch upon the duty to defend, which Montana law recognizes as "independent from and broader than the duty to indemnify created by the same

insurance contract." *Farmers Mut. Ins. Co. v. Staples,* 90 P.3d 381, 384 (Mont. 2004).

Montana law has long recognized that a breach of the duty to defend under an insurance policy occurs upon "the refusal of the insurer to defend the action," which if unjustified, "constitute[s] a breach of the contract." *Indep. Milk & Cream Co. v. Aetna Life Ins. Co.*, 216 P. 1109, 1110 (Mont. 1972); *see also Home Ins. Co. v. Pinski Bros., Inc.,* 500 P.2d 945, 949 (Mont. 1972) ("Having refused to defend Knight against [plaintiff's] complaint alleging negligence within Knight's policy coverage, Home's refusal to defend constituted a breach of contract").

While the Montana Supreme Court has been clear and consistent in its holdings that a refusal to defend constitutes a breach of the insurance contract, it has not yet answered the question of when a cause of action for breach of that duty accrues. Other jurisdictions have articulated two answers to this question. Under the majority view:

> [I]n an action by an insured against an insurer for refusal to defend, the insured's cause of action under general statutes of limitations accrues when judgment is obtained against the insured, as opposed to the date the insurer refused to defend, the date the insurer denies coverage, or the insured's payment of a compromise settlement.

*Dutton-Lainson Co. v. Cont'l Ins. Co.*, 716 N.W.2d 87, 100 (Neb. 2006) (quoting

12

17 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 236:102 at 236-94 to 236-95 (2000)). If this rule was applied to the undisputed facts of the instant case, Pacific's claim would have accrued on August 7, 2007, the date on which it entered into the consent judgment with the City of Bozeman.

Under the minority rule, the cause of action for breach of the duty to defend accrues "when the insurer refuses to defend," and accordingly, "the statute of limitations period . . . commences on the day the insurer refuses tender of the defense." *Lambert v. Commonwealth Land Title Ins. Co.*, 811 P.2d 737, 739 (Cal. 1991). Under this rule, Pacific's claim would accrue on April 27, 2005, when Great American refused to defend Pacific.

While the Montana Supreme Court has not yet resolved this question, under either paradigm, Pacific filed its complaint within eight years of the accrual date for the alleged breach, and thus within the statute of limitations.

### 3. The Duty to Indemnify

The Court reaches a similar conclusion on the duty to indemnify. The Montana Supreme Court has yet to rule directly on accrual of a claim for breach of the duty to indemnify, but it has ruled on the accrual of indemnity claims. While the distinction between these two claims is critical to the Court's decision on these motions, they are related, such that a breach of the duty to indemnify—and the

13

accrual date for that breach—cannot logically occur until the underlying claim for indemnity accrues.

Under Montana law, the statute of limitations for an indemnity claim starts to run "when all the elements accrue[] for [insured] to file a claim with [insurer]." *Capital Indemnity*, 137 P.3d at 526. In the PTSCA cases, the Supreme Court held that in subrogation actions for indemnify brought by the Board against insurers, the statute of limitations begins to run not when the insurer denies the indemnity claim, but when the claim accrues. Throughout those cases, the court points to "discovery of the leak and the subsequent obligation on the part of the owners to cleanup the spilled petroleum" as the moment the owners' claims accrued. *Federated Service*, 185 P.3d at 1002. This language is entirely consistent with the court's prior holdings. *See, e.g., St. Paul and Marine Ins. Co. v. Thompson*, 451 P.2d 98, 102 (Mont. 1969) (stating the statute of limitations will not run on a common law indemnity claim "until the obligation [to pay] arises").

There are several critical distinctions between the PTSCA cases and the case at bar—aside from the fact that this claim is for breach of contract—that preclude Great American's extremely broad interpretation of the PTSCA holdings. First, those indemnity claims arose under the PTSCA scheme of liability, which is distinct, specific, and automatic. *See* Mont. Code Ann. § 75-11-309(1)(a) ("If an

owner or operator discovers or is provided evidence that a release may have occurred from the owner's or operator's petroleum storage tank, the owner or operator shall immediately notify the department of the release and conduct an initial response to the release in accordance with state and federal laws"). The court gives no indication that its holdings apply outside of the PTSCA context, let alone to all environmental pollution, as contended by Great American.

Second, the precise wording attributing liability "when the leaks were discovered" is immediately followed by "and the obligation for cleanup occurred," *Federated Service*, 185 P.3d at 1002, which implies that the two are not necessarily synonymous in the eyes of the court. Here, nothing in CECRA or the undisputed facts indicates automatic liability, or anything that could be deemed an "obligation" until Pacific executed the consent judgment on August 7, 2007.

Finally, the owners in the PTSCA cases all paid their cleanup costs more than eight years before the Board filed its indemnity claims against the insurance companies, which is a significant factor in the court's determination and its underlying policy rationale. Here, the plaintiff settled its liability and paid the cleanup costs once Great American declined to defend it against MDEQ and the City of Bozeman, and did so within the eight year statute of limitations.

The Court rejects the Defendant's interpretation of the PTSCA cases. Under the undisputed facts, Pacific first became "obligated," and thus its indemnity claim accrued, on August 7, 2007 when it executed the consent judgment. Prior to that date, Pacific did not render—and was under no legal obligation to render—any payments for which it could be indemnified. Although Montana law does not yet define when the claim for breach of a duty to indemnify accrues, it cannot logically accrue prior to the date on which the indemnity claim itself accrues.

Because the determinations articulated above dispose of the motions before the Court, no discussion of the myriad of other arguments asserted by the parties in their extensive briefing on these motions is required.

In summary, the earliest point at which the alleged breach of the duty to defend could have occurred is on April 27, 2005, when Great American denied Pacific's request. The earliest point at which the alleged breach of the duty to indemnify could have occurred is on August 7, 2007, when Pacific executed the consent judgment. Thus, as a matter of law, Pacific's claims were properly filed within the eight year statute of limitations.

### B. Motion to Amend the Scheduling Order

Defendants National Indemnity Company and Resolute Management, Inc. ("Movants") have filed a motion (doc. 105) seeking to modify the September 27,

2012 scheduling order (doc. 35) to allow them to file a motion for summary judgment,

> as to the Statute of Limitations on the grounds that, in the interest of judicial efficiency and in light of the recent settlement by Plaintiff . . . of its claims against Defendants, Century Indemnity Company ("Century") and Central National Insurance Company ("Central National"), this Court's bifurcation of this action into two separate phases should be modified to permit NICO and Resolute to address the legal issues that Century and Central National raised in the Motion for Summary Judgment as to Statute of Limitations in general and in the specific context of Pacific's bad faith claims.

(Doc. 104 at 2.) Pacific opposes the motion. (Doc. 108.)

The question of the "Statute of Limitations in general" has been extensively briefed, and is resolved by this order. This case has been bifurcated, and all claims against the Movants will be addressed during Phase II. The Court does not find the Movants' arguments regarding their need to brief on the statute of limitations "in the specific context of Pacific's bad faith claims" at this juncture of Phase I compelling. Modification of the scheduling order at this point does not serve the purposes of expediency, judicial economy, convenience, or avoiding prejudice. *See* Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more issues, claims, crossclaims, counterclaims, or third-party claims.").

17

## IV. Conclusion

According to the undisputed facts in this case, Pacific's breach of contract claims accrued no earlier than April 27, 2005. Thus, the eight year statute of limitations period had not yet expired on May 2, 2012 when Pacific filed its complaint. There being no genuine dispute as to any material fact in this case, Pacific is entitled to judgment as a matter of law on Great American's statute of limitations affirmative defense.

Accordingly, IT IS ORDERED that Great American's motion for partial summary judgment on the statute of limitations (doc. 60) is DENIED, and Pacific Hide and Fur Depot, Inc.'s cross-motion for partial summary judgment on the statute of limitations (doc. 98) is GRANTED.

Because the Court has resolved the statute of limitations question, further motions and briefing on the issue are unnecessary.

Accordingly, IT IS FURTHER ORDERED that National Indemnity Company and Resolute Management, Inc.'s motion to amend September 27, 2013 scheduling order (doc. 104) is DENIED.

DATED this 15th day of October, 2013.

Dana L. Christensen, Chief District Judge
United States District Court